**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                      No. 96-4878

WILLADEUR ALPHONSE, a/k/a Kiki,
Defendant-Appellant.

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                      No. 96-4892

JOSEPH HUGHEY, JR.,
Defendant-Appellant.

Appeals from the United States District Court
for the Middle District of North Carolina, at Greensboro.
Richard C. Erwin, Senior District Judge.
(CR-96-108)

Submitted: October 7, 1997

Decided: October 31, 1997

Before HALL and HAMILTON, Circuit Judges, and
PHILLIPS, Senior Circuit Judge.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

D. Erik Albright, SMITH, HELMS, MULLISS & MOORE, L.L.P., Greensboro, North Carolina; John Stuart Bruce, Acting Federal Public Defender, Gregory Davis, Assistant Federal Public Defender, Greensboro, North Carolina, for Appellants. Walter C. Holton, Jr., United States Attorney, Douglas Cannon, Assistant United States Attorney, Greensboro, North Carolina, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Willadeur Alphonse and Joseph Hughey, Jr. ("Defendants"), each pled guilty to conspiring to possess with intent to distribute crack cocaine and cocaine hydrochloride in violation of 21 U.S.C.A. §§ 841(b)(1)(A), 846 (West Supp. 1997).* The court sentenced Alphonse to 160 months imprisonment to be followed by a five-year supervised release term and sentenced Hughey to an 87-month prison term and five years of supervised release. They appeal their sentences, contending that the district court erred in sentencing them based on crack cocaine instead of cocaine hydrochloride. Finding no error, we affirm.

I.

Hughey told a confidential informant that he knew Alphonse and could obtain drugs from him. The informant arranged for Alphonse to deliver about ten ounces of crack cocaine to a buyer. Hughey and

_____

*Alphonse and Hughey also were indicted for possession with intent to distribute 288.2 grams of crack cocaine and 8 grams of cocaine hydrochloride, but the court dismissed this count on the government's motion.

2

the informant met Alphonse at the airport, and they drove to a motel to wait for the buyer to arrive. Before they arrived at the motel, authorities conducted a felony vehicle stop, arrested Hughey and Alphonse, and seized 288.2 grams of crack cocaine and eight grams of cocaine hydrochloride. The district court accepted Alphonse and Hughey's guilty pleas to conspiracy, finding that they were entered knowingly and voluntarily and that a factual basis supported the pleas.

At the sentencing hearing, Defendants objected to the probation officer's calculation of their base offense levels based on crack cocaine rather than cocaine hydrochloride. They contended that there was no sodium bicarbonate present to bring the drugs within the definition of "crack" in U.S. Sentencing Guidelines Manual § 2D1.1(c), note (D) (1995).

Testimony at the hearing from an agent with the Drug Enforcement Administration ("DEA") disclosed that the drugs seized from Defendants were in two packages, that the larger package contained an off-white rocky substance, and that based on his experience, he believed the larger package contained crack cocaine. And an expert in forensic chemistry testified that she conducted several tests that determined the larger package contained cocaine base, commonly referred to as crack. On cross-examination, the chemist stated that the drugs could be crack cocaine even when sodium bicarbonate, baking powder, ammonia, or lye--substances commonly used to cook powder cocaine into crack--did not appear in the laboratory analysis. She noted that none of those additional substances appeared in the tests she ran but that she did not test specifically for their presence.

Based on the testimony presented at the sentencing hearing, the district court found the evidence sufficient to sentence Defendants based on crack cocaine. The court also noted that the indictment charged Defendants with conspiring to possess with intent to distribute 288.2 grams of cocaine base ("crack"); that at the plea colloquy, Defendants entered guilty pleas to that indictment; and that a factual basis supported the pleas. This appeal followed.

II.

Defendants contend that the district court erred in calculating their base offense levels because the government failed to prove that the

3

drugs they conspired to distribute were crack cocaine, as opposed to another form of cocaine base. See U.S.S.G. § 2D1.1(c), note (D) (specifically noting that "crack" is but one form of "cocaine base"). In reviewing the district court's application of the sentencing guidelines, we review factual determinations for clear error, while legal determinations are subject to de novo review. See United States v. Blake, 81 F.3d 498, 503 (4th Cir. 1996).

Although Defendants rely primarily on United States v. James, 78 F.3d 851 (3d Cir.), cert. denied, ___ U.S. ___, 65 U.S.L.W. 3259 (U.S. Oct. 7, 1996) (No. 95-9224), and United States v. Munoz-Realpe, 21 F.3d 375 (11th Cir. 1994), their reliance is misplaced. James involved an indictment that charged possession of "a detectable amount of cocaine base" and an ambiguous plea colloquy. See 78 F.3d at 855-56. Furthermore, the issue was hotly litigated at sentencing, and the district court eschewed any specific factual findings, holding only that "cocaine base means crack for purposes of the guidelines." Id. at 856-57. Faced with the ambiguities in the record and the lack of factual findings by the district court, the Third Circuit found that the government had failed to prove that the substance at issue was crack cocaine. The court then remanded for resentencing. Id. at 858.

In Munoz-Realpe, the defendant pled guilty to importation of "cocaine." He argued at sentencing that the drug at issue in his case, "cocaine base in liquid form," should be treated as cocaine powder for sentencing purposes. The Eleventh Circuit affirmed the district court's factual finding that the substance was not crack cocaine. See 21 F.3d at 376-77 (noting that cocaine base in liquid form requires further processing and can just as easily be made into powder cocaine as crack cocaine).

Unlike James and Munoz-Realpe, however, the evidence in this case is unambiguous--the record discloses no indication that the cocaine attributed to Alphonse and Hughey was any form of cocaine base other than crack. See United States v. Hall, 109 F.3d 1227, 1235-36 (7th Cir. 1997). The DEA agent testified that the larger package of drugs contained an off-white rocky substance that, based on his experience, he believed was crack cocaine. Moreover, a forensic chemist testified that the drugs were crack cocaine and that the

4

absence of sodium bicarbonate did not conclusively determine whether or not the drugs were crack cocaine. Finally, Defendants offered no proof that the drugs were any other form of cocaine base. We therefore find that the district court's factual finding that the cocaine was crack cocaine for purposes of the sentencing guidelines was not clearly erroneous and that the court properly sentenced Defendants based on crack cocaine.

Accordingly, we affirm. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

AFFIRMED

5